Suzanne Martin RASNICK, Appellant,

v.

John H. RASNICK, Appellee.

No. 96–CA–002448–MR.

Court of Appeals of Kentucky.

July 2, 1998.

Discretionary Review Denied Jan. 13, 1999.

Lawrence R. Webster, Pikeville, for appellant.

Herman W. Lester, Pikeville, for appellee.

Before COMBS, HUDDLESTON and KNOPF, JJ.

## OPINION

HUDDLESTON, Judge.

The marriage between Suzanne Martin Rasnick and John H. Rasnick was dissolved by Clay Circuit Court on October 19, 1993. Suzanne was awarded physical custody of the parties' three children and John was ordered to make support payments of $500.00 per month for each child. The marital property accumulated by the parties was divided by the court in accordance with a property settlement agreement executed by the parties on August 11, 1993, and modified on October 15, 1993. The agreement contains the following provision:

3. * * * The parties hereto acknowledge that each has made a final and total disclosure to the other of properties in their entirety accumulated during the course of their marriage.

On May 19, 1994, Suzanne moved, pursuant to Ky. R. Civ. Proc. (CR) 60.02, for relief from the decree insofar as it incorporates the property settlement agreement and from the provisions made for child support. She asserted that the agreement, and thus the decree founded on it, was "manifestly unfair and inequitable" and "was procured by fraud, undue influence [and] overreaching." On August 23, 1996, after the parties were given an opportunity to take proof and submit

memoranda, the motions were denied. Suzanne thereupon appealed to this Court.

Insofar as is relevant to this case, CR 60.02 provides that:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: ... (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; ... (d) fraud affecting the proceedings, other than perjury or falsified evidence; ... or (f) any other reason of an extraordinary nature justifying relief.

■ Suzanne's contention is that she was led to believe that the parties' net worth was far less than it was in reality and that, as a result, she was fraudulently induced to give up a disproportionate share of the property the parties had accumulated during their marriage. She claims that it was well after the dissolution decree became final before she discovered the full extent of the assets she surrendered in the property settlement agreement. John responds that in April 1993, before the agreement was signed, he and Suzanne met with the Lexington attorney who had assisted them in formulating an estate plan. At the meeting, John and Suzanne went over a joint financial statement and discussed the effect a dissolution of their marriage would have upon certain trusts they had established. Thereafter, John left the room so that Suzanne could freely seek further financial information or advice from their attorney. An accountant informed the court, by way of an affidavit, that he met with John and Suzanne in May 1993 and reviewed in detail their financial interests, holdings, partnerships and approximate net worth. Finally, Suzanne concedes that she signed the parties' joint 1990, 1991 and 1992 federal income tax returns, which reflect an adjusted gross income averaging $456,500.00 per year. The evidence presented by John effectively refutes Suzanne's claim, founded upon CR 60.02(b), that evidence of the par-

ties' net worth was newly discovered and, by due diligence, could not have been discovered in time to move for a new trial.

Suzanne's primary focus is on CR 60.02(d)—the "fraud affecting the proceedings" provision—as a basis for her motion for relief from the decree. Neither Suzanne nor John cites any Kentucky case that addresses the issue whether failure to disclose in a dissolution proceeding pertinent evidence regarding income earned or property acquired during marriage [1] amounts to "fraud affecting the proceeding," as the phrase is used in CR 60.02(d). However, there are a few Kentucky cases that deal with related issues, and there are a number of cases from other jurisdictions, both state and federal, where the issue has been considered.

According to the leading authority on the Kentucky Rules of Civil Procedure, fraud affecting the proceedings relates to what is denominated "extrinsic fraud." 7 Kurt A. Philipps, Jr., *Kentucky Practice*, CR 60.02, cmt. 6 (5th ed.1995). "This covers fraudulent conduct outside of the trial which is practiced upon the court, or upon the defeated party, in such a manner that he is prevented from appearing or presenting fully and fairly his side of the case." *Id.* "Normally, perjury by a witness or nondisclosure of discovery material is not the type of fraud to outweigh the preference for finality." *Id.*

The case from a sister state that is most nearly on point is *Wise v. Nirider*, 261 Mont. 310, 862 P.2d 1128 (1993). In *Wise*, a former wife sought to set aside a property settlement agreement some two years after it was approved by the trial court and to reopen dissolution proceedings based upon an allegation that her husband had failed to disclose the value of his pension plan prior to entry of a final decree. The Montana Supreme Court reversed a district court order granting the wife's CR 60.02 motion, concluding that the husband's conduct did not "rise[ ] to a level which is egregious enough to be characterized as fraud upon the court." 261 Mont. at 316, 862 P.2d at 1132. The Court went on to say that:

---

1. John, of course, insists that Suzanne had access to all pertinent information regarding the parties' income and assets.

[F]raud upon the court is "that species of fraud which does or attempts to subvert the integrity of the court itself." * * * Such fraud has been construed to include only the most egregious conduct, such as bribery of a judge or a member of the jury, evidence fabrication, and improper attempts to influence the court by counsel. * * * Generally, fraud between the parties, without more, does not rise to the level of fraud upon the court. (Citations omitted.)

Two years after the *Wise* decision was rendered, the Montana Supreme Court held that false or fraudulent representations or concealments made during court proceedings do not constitute extrinsic fraud and are not grounds for reopening a decree or judgment. *Miller v. Miller*, 273 Mont. 286, 902 P.2d 1019, 1023 (1995). The Court defined "extrinsic fraud" as "some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. * * * Extrinsic fraud is collateral to the matters tried by the court, but does not include fraud in the matters on which the judgment was rendered." (Citations omitted.) *Id.* at 1022.

The same rule prevails in Minnesota. For example, in *Halloran v. Blue and White Liberty Cab Co.*, Inc., 253 Minn. 436, 442, 92 N.W.2d 794, 798 (1958), that state's Supreme Court observed that:

A judgment may be set aside at any time for after-discovered fraud upon the court. Where a court is misled as to a material circumstance, or its process is abused, resulting in the rendition of a judgment which would not have been given if the whole conduct of the case had been fair, the court has inherent power to vacate for fraud and that power includes as well the power to modify. (Citations omitted.)[However,] [i]t is recognized that the mere failure to disclose to an adversary, or the court, matters which would defeat a party's claim or defense is not such extrinsic fraud as will justify or require a vacation of the judgment. . . .

The issue has arisen in a number of federal cases. Closest to home is the decision by the United States Court of Appeals for the Sixth Circuit in *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976), where there were allegations supporting a Fed.R.Civ.P. (FRCP) 60(b) motion based on nondisclosure of documents during pretrial discovery. The Court held that such allegations did not support an action to set aside a judgment based on fraud upon the court. Neither, the Court said, is the alleged perjury of a witness a ground for an action for fraud upon the court. *Id.* at 1118.

In *Gleason v. Jandrucko*, 860 F.2d 556, 12 Fed.R.Serv.3d 909, (2nd Cir.1988), the Court was faced with a claim that the defendants had failed to disclose relevant evidence and had committed perjury during pretrial discovery resulting in plaintiff's decision to dismiss his complaint with prejudice. The district court held that the alleged perjury and nondisclosure were intrinsic to the prior proceeding and therefore did not rise to the level of fraud on the court. The Court of Appeals for the Second Circuit agreed. Citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944), the Court observed that after-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of fraud upon the court. Similarly, the Court said, allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action under FRCP 60(b). "In short, neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant." *Gleason*, 860 F.2d at 560. The Court agreed with the Fourth Circuit Court of Appeals' observation in *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir.1982), that "[p]erjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible." *Id.* at 560.

Examples of what is meant by "fraud upon the court" as used in FRCP 60(b) are given in some detail in *Luttrell v. United States*, 644 F.2d 1274, 1276 (9th Cir.1980). The Court concludes by saying that " '[f]raud upon the court' as a basis for equitable relief

is construed narrowly in order to preserve the finality of judgments, an important legal and social interest." In the broad sense, any fraud connected with the presentation of a case to a court is a fraud on the court. However, as the Court of Appeals for the Third Circuit pointed out in *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1022, 6 Fed. R.Serv.3d 1144 (3rd Cir.1987):

> That cannot be the sense in which the term is used in the final saving clause of Rule 60(b) [CR 60.02(f) ]. The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) [CR 60.02(d) ] or by an independent action [CR 60.03], subject to the procedural limitations applicable to those remedies.

In *Burke v. Sexton*, Ky.App., 814 S.W.2d 290 (1991), this Court held that the behavior of a husband who misled his wife into believing that he had abandoned an action for dissolution of their marriage after persuading her to sign a waiver of notice of further proceedings and who then prosecuted the action to a conclusion amounted to "fraud affecting the proceedings." This ruling is consistent with the state and federal decisions discussed earlier. In a seemingly inconsistent decision, this Court held in *Cain v. Cain*, Ky.App., 777 S.W.2d 238 (1989), that a former wife who led her husband and the court to believe that he was the natural father of her child had perpetrated a fraud affecting the proceedings. Although the Court did not engage in an extended discussion of the reasons why the husband's CR 60.02(d) motion should be granted, the rationale for the decision seems to have been that the former wife was perpetrating a continuing fraud on the court, as well as the husband, in seeking enforcement of court-ordered child support payments to which she was not entitled. Furthermore, it was important, this Court felt, to determine from blood tests once and for all whether the former husband was or was not the father of the child born during the parties' marriage. We do not view *Cain* as authority for Suzanne's argument that the nondisclosure of assets is extrinsic fraud.

■ In summary, we hold that nondisclosure of assets in a dissolution action does not constitute "fraud affecting the proceedings" as the term is used in CR 60.02(d). We also conclude that Suzanne has failed to demonstrate "any other reason of an extraordinary nature justifying relief" [2] from the property division portion of the decree.

The second issue that Suzanne raises on appeal concerns child support which she contends is woefully inadequate considering John's income. The disparity between the child support John was ordered to pay ($18,-000.00 per annum) and his average annual income (in excess of $400,000.00) is striking. Unfortunately, the trial court made no findings concerning modification of support or the utilization of the child support guideline table contained in Ky. Rev. Stat. (KRS) 403.212(6). KRS 403.211(3)(e) provides that a trial court may deviate from the guidelines if the combined parental income is in excess of the guidelines, which is unquestionably the case here. However, "[a]ny deviation must be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation." KRS 403.211(2). *See also* KRS 403.211(3).

As noted earlier, John and Suzanne's adjusted gross income for the three years preceding entry of the decree averaged $456,-500.00, well beyond the guidelines.[3] In such a case, the trial court is authorized to use its "judicial discretion in determining child support." KRS 403.212(5). However, the trial court's order does not reveal how it determined that support of $500.00 per month per child is adequate or whether income from trusts established for the benefit of the children was taken into account in calculating support. In fact, the order says nothing more than that "[t]he motion to increase child support [is] overruled (sic—denied)."

■ We believe that the disparity between John's income and the amount he was ordered to pay in child support presents a *prima facie* case under CR 60.02(f) for set-

---

2. Ky. R. Civ. Proc. (CR) 60.02(f).

3. The maximum annual adjusted parental gross income accounted for in the guidelines is $180,-000.00. Ky.Rev.Stat. (KRS) 403.212(2)(b).

ting aside the portion of the decree that fixes child support that has not been refuted by John. Because of the absence of findings on this crucial issue, we are unable to review the trial court's order to determine whether it abused its discretion in setting child support. Therefore, we vacate the order denying Suzanne's CR 60.02 motion for relief from that portion of the decree setting the amount of support to be paid by John and remand this case to Clay Circuit Court with directions to make specific and detailed findings as to the amount of child support that John is required to pay. The court may, as necessary, permit the parties to supplement the record. Any increase in child support shall be retroactive to August 23, 1996, the date on which Suzanne's CR 60.02 motion was denied. The balance of the order from which this appeal is prosecuted is affirmed.

All concur.